## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ' |
| v. | ' CRIMINAL NO. 4:15-CR-319 |
| GODWIN ORIAKHI, | ' |
| Defendant. | ' |

## PLEA AGREEMENT

The United States of America, by and through Abe Martinez, Acting United States

Attorney for the Southern District of Texas; Senior Trial Attorney Jonathan T. Baum and Trial

Attorney Aleza S. Remis, Fraud Section, Criminal Division, United States Department of Justice;

Defendant, Godwin Oriakhi ("Defendant"); and Defendant's counsel, Sean Buckley, pursuant to

Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they

have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.       Defendant agrees to plead guilty to Counts One, Two, and Thirteen of the Second

Superseding Indictment.   Counts One and Two charge Defendant with conspiracy to violate

Title 18, United States Code, Section 1349, that is, healthcare fraud, in violation of Title 18,

United States Code, Section 1347.   Count Thirteen charges Defendant with conspiracy to violate

Title 18, United States Code, Section 1956(h), that is, money laundering, in violation of Title 18,

United States Code, Section 1956(a)(1)(A)(i).   By entering this plea, Defendant agrees that he is

waiving any right to have the facts that the law makes essential to the punishment proven to a

jury or a judge beyond a reasonable doubt.

## Punishment Range

2.      The *statutory* maximum penalty for violation of Title 18, United States Code, Section 1349, is a term of imprisonment of not more than ten years or a fine of not more than $250,000, or both; full restitution; and forfeiture of assets as outlined below.   The *statutory* maximum penalty for a violation of Title 18, United States Code, Section 1956(h), is a term of imprisonment of not more than twenty years or a fine of not more than $500,000 or twice the value of the property involved in the financial transaction, or both; full restitution; and forfeiture of assets as outlined below.   Defendant may also receive a term of supervised release after imprisonment of up to three years.   *See* Title 18, United States Code, Sections 1347, 3556, 3559(a)(3), 3571(b)(1)-(3), 3581(b)(3), and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release that may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction for a total special assessment of three hundred dollars ($300).   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office,

2

P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4.       Defendant recognizes that pleading guilty may have consequences with respect to

his immigration status if he is not a citizen of the United States.   Defendant understands that if

he is not a citizen of the United States, by pleading guilty he may be removed from the United

States, denied citizenship, and denied admission to the United States in the future.   Defendant's

attorney has advised Defendant of the potential immigration consequences resulting from

Defendant's plea of guilty.

**Exclusion from Federal Healthcare Programs**

5.       Defendant understands and acknowledges that as a result of this plea, Defendant

will be excluded from participating in all federal healthcare programs, including Medicare and

Medicaid Programs ("Medicare" and "Medicaid," respectively).   Defendant agrees to complete

and execute all necessary documents provided by any department or agency of the federal

government, including but not limited to, the United States Department of Health and Human

Services, to effectuate this exclusion within sixty days of receiving the documents.   This

exclusion will not affect Defendant's right to apply for and receive benefits as a beneficiary

under any federal health care program, including Medicare and Medicaid.

**Rights at Trial**

6.       Defendant understands that by entering into this agreement, he surrenders certain

rights as provided in this Plea Agreement.   Defendant understands that the rights of a criminal

defendant include the following:

        (a)      If Defendant persisted in a plea of not guilty to the charges, Defendant
would have the right to a speedy jury trial with the assistance of counsel.

3

The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and,

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. But if Defendant desired to do so, he could testify on his own behalf.

### Cooperation

7.     The parties understand this Plea Agreement carries the potential for a motion for departure under Section 5K1.1 of the United States Sentencing Guidelines (the "Sentencing Guidelines" or the "Guidelines"). Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Department of Justice, Criminal Division, Fraud Section. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 19 through 22 and 24 through 28 of this Plea Agreement. Defendant understands and agrees that the United States may request that sentencing be deferred until that cooperation is complete.

8.     Defendant understands and agrees that the usage "fully cooperate," as used

4

herein, includes providing all information relating to any criminal activity known to Defendant,

including, but not limited to, healthcare fraud.   Defendant understands that such information

includes both state and federal offenses arising therefrom.   In that regard:

(a)   Defendant agrees that this Plea Agreement binds only the United States
Attorney for the Southern District of Texas; the United States Department
of Justice, Criminal Division, Fraud Section; and Defendant, and that it does
not bind any other United States Attorney or any other component or unit
of the Department of Justice;

(b)   Defendant agrees to testify truthfully as a witness before a grand jury or in
any other judicial or administrative proceeding when called upon to do so
by the United States.   Defendant further agrees to waive his Fifth
Amendment privilege against self-incrimination for the purpose of this
Agreement;

(c)   Defendant agrees to voluntarily attend any interviews and conferences as
the United States may request;

(d)   Defendant agrees to provide truthful, complete, and accurate information
and testimony and understands any false statements made by Defendant to
the grand jury or at any court proceeding (criminal or civil), or to a
government agent or attorney, can and will be prosecuted under the
appropriate perjury, false statement, or obstruction statutes;

(e)   Defendant agrees to provide to the United States all documents in his
possession or under his control relating to all areas of inquiry and
investigation; and,

(f)   Should the recommended departure, *if any*, not meet Defendant's
expectations, Defendant understands he remains bound by the terms of this
Plea Agreement and that he cannot, for that reason alone, withdraw his plea.

**Agreement Binding – Only Southern District of Texas and
U.S. Department of Justice, Criminal Division, Fraud Section**

9.   This Plea Agreement binds only the United States Attorney's Office for the

Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud

Section; and Defendant.   It does not bind any other United States Attorney or any other

5

component of the Department of Justice.   The United States will bring this Plea Agreement and

the full extent of Defendant's cooperation to the attention of other prosecuting offices if

requested.

### Sentence Determination

      10.    Defendant is aware that the sentence will be imposed after consideration of the

Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions

of Title 18, United States Code, Section 3553(a).   The United States and Defendant agree that

the following Sentencing Guidelines will be used to calculate Defendant's Guidelines range:

      (a)    Defendant and the United States agree that the loss related to the conduct described in the Factual Basis of this Plea Agreement is the amount Defendant and his co-conspirators billed to Medicare and Medicaid, which was approximately $17,212,051, and that this loss amount will be used to support a 20-level enhancement to his base offense level under Section 2B1.1(b)(1)(K) of the Sentencing Guidelines because Defendant and his co-conspirators intended to defraud Medicare and Medicaid of more than $9.5 million;

      (b)    Defendant and the United States agree that the Court should apply Section 2B1.1(b)(7)(B)(ii) of the Sentencing Guidelines and enhance Defendant's base offense level by 3 levels because Defendant and his co-conspirators defrauded Medicare and Medicaid of more than $7 million;

      (c)    Defendant and the United States agree the Court should apply Section 2S1.1(a)(1) and (b)(2)(B) of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant conspired to launder the money that he and his co-conspirators defrauded from Medicare and Medicaid and used the proceeds of their fraud to promote the counts of conviction, in violation of Title 18, United States Code, Section 1956(h); and,

      (d)    Defendant and the United States agree that the Court should apply Section 3B1.3 of the Sentencing Guidelines and enhance Defendant's base offense level by 2 levels because Defendant abused a position of trust to commit the counts of conviction.

The United States and Defendant agree that in addition to the above Sentencing Guidelines, the

Court may use any other Sentencing Guidelines to calculate Defendant's Guidelines range.   The United States and Defendant agree that the United States is free to ask the Court to consider Defendant's relevant conduct and apply any other Sentencing Guidelines to Defendant's Guidelines range even if those Sentencing Guidelines increase Defendant's Guidelines range. Defendant is free ask the Court not to apply any other Sentencing Guidelines to his Guidelines range.

11.     Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction, not a promise, and such estimate **did not induce his guilty plea** and is not binding on the United States, the Probation Office, or the Court.   The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court.   *United States v. Booker*, 125 S. Ct. 738 (2005).   Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated Guideline range.

12.     Defendant acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum sentence for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.   Defendant understands and agrees that the parties' positions regarding the application of the Sentencing

Guidelines do not bind the Court and that the sentence imposed is within the discretion of the
sentencing judge. If the Court should impose any sentence up to the maximum established by
statute, or should the Court order any or all of the sentences imposed to run consecutively,
Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill
all of the obligations under this Plea Agreement.

13.     Defendant understands and agrees that each and all waivers contained in the Plea
Agreement are made in exchange for the concessions made by the United States in this Plea
Agreement.

### The United States' Agreements

14.     The United States agrees to each of the following:

(a)     At the time of sentencing, the United States agrees not to oppose
Defendant's anticipated request to the Court and the United States
Probation Office that he receive a 2-level downward adjustment pursuant
to Section 3E1.1(a) of the Sentencing Guidelines, should Defendant accept
responsibility as contemplated by the Sentencing Guidelines;

(b)     Defendant and the United States agree that the base offense level for
Counts One and Two, Conspiracy to Commit Healthcare Fraud, is
determined by Section 2B1.1(a)(2) of the Sentencing Guidelines;

(c)     If Defendant fulfills his obligations under this Plea Agreement, including,
but not limited to, persisting in this Plea through sentencing and not
opposing the forfeiture of assets contemplated in paragraphs 19 through 22
and 24 through 28 of this Plea Agreement, the United States agrees to
recommend a sentence at the low end of the applicable Sentencing
Guidelines range;

(d)     If the Defendant substantially assists the United States, and a motion is
made to the Court; the United States will recommend to the Court that the
reduction in sentence be subtracted from the low end of the applicable
guideline range; and

(e)     If Defendant pleads guilty to Counts One, Two, and Thirteen of the Second
Superseding Indictment, persists in that plea through sentencing, and, if

8

applicable, fulfills his obligations under the cooperation provisions of this Plea Agreement; and if the Court accepts this Plea Agreement, the United States will move to dismiss any remaining counts of the Second Superseding Indictment at the time of sentencing.

### United States' Non-Waiver of Appeal

15.     The United States reserves the right to carry out its responsibilities under

Guidelines sentencing.   Specifically, the United States reserves the right to:

(a)     Bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     Set forth or dispute sentencing factors or facts material to sentencing;

(c)     Seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     File a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and,

(e)     Appeal the sentence imposed or the manner in which it was determined.

### Factual Basis for Guilty Plea

16.     Defendant is pleading guilty because he is guilty of the offenses charged in

Counts One, Two, and Thirteen of the Second Superseding Indictment, which charge him with

conspiracy to commit healthcare fraud and launder money, in violation of Title 18, United States

Code, Sections 1349 and 1956(h).   If this case were to proceed to trial, Defendant agrees that the

United States could prove each element of the offenses charged in Counts One, Two, and

Thirteen beyond a reasonable doubt.   The following facts, among others, would be offered to

establish Defendant's guilt.   During the time period alleged in the Second Superseding

Indictment:

Defendant, his daughter and co-conspirator, Idia Oriakhi ("Idia"), and other members of

Defendant's family owned, operated, and controlled five home healthcare agencies known as Aabraham Blessings, LLC aka "Aabrahams Devine Blessings, LLC" ("Aabraham Blessings"); Baptist Home Care Providers, Inc. ("Baptist"); Community Wide Home Health, Inc. ("Community Wide"); Four Seasons Home Healthcare, Inc. ("Four Seasons"); and Kis Med Concepts, Inc. ("Kis Med") (collectively the "Oriakhi Companies"), which were Texas corporations located in and around Houston, Texas—all in the Southern District of Texas. Defendant owned and administered all of the Oriakhi Companies, and directed their day-to-day operations.

Of the Oriakhi Companies, Baptist was the only company enrolled as a provider with both Medicare and Medicaid—the remaining Oriakhi Companies were enrolled as Medicaid providers only.  Baptist submitted claims both to Medicare for home healthcare services and, along with the other Oriakhi Companies, to the State of Texas' Home and Community-Based Service ("HCS") and the Primary Home Care ("PHC") Programs, which were federally authorized Medicaid programs and plans operated by the Texas Department of Aging and Disability Services ("DADS").  The HCS and PHC Programs provided community-based services and support to individuals with intellectual disabilities, in-home attendant services to individuals who had an approved medical need for assistance with personal-care tasks, or in-home attendant services to eligible adults.  Collectively, the services offered by both the HCS and PHC Programs were known commonly as "personal attendant services" ("PAS").

The Oriakhi Companies made money by submitting claims to Medicare and Medicaid, which were "health care benefit programs" that affected interstate commerce, as defined by Title 18, United States Code, Section 24.  Both Medicare and Medicaid were trust-based healthcare

benefit programs, and operated on the assumption that the healthcare providers who submitted claims to them for reimbursement did so with honesty and candor and not with the intent to defraud Medicare or Medicaid by billing the programs for medically unnecessary services or for services that the providers never provided to their patients.

Defendant completed and submitted applications and contracts to enroll the Oriakhi Companies as providers in Medicare and Medicaid.   In so doing, Defendant represented and certified that he would submit claims that complied with all federal and state laws, including the federal Anti-Kickback Statute, and that the claims that the Oriakhi Companies submitted to Medicare and Medicaid would seek reimbursement for medically necessary services that the Oriakhi Companies actually provided to their patients.   Defendant also knew that Medicare and Medicaid's laws, regulations, and program instructions prohibited both programs from paying any claim predicated on an illegal kickback payment.

From in or around 2009 through in or around 2016, Defendant; Idia; Baptist's primary admitting nurse, Charles Esechie ("Esechie"); and others conspired to defraud Medicare and Medicaid by using the Oriakhi Companies to submit or cause the submission of fraudulent home healthcare and PAS services claims to Medicare and Medicaid.   Nearly all of the claims that Defendant, Idia, and their co-conspirators submitted to Medicare and Medicaid were predicated on illegal kickback payments that they paid to patient recruiters, Defendant's employees, and the Oriakhi Companies' patients for patient referrals.

Specifically, Defendant, Idia, and their co-conspirators paid illegal kickback payments to numerous patient recruiters—also called "community liaisons" or "marketers"—for referring hundreds of Medicare and Medicaid patients to the Oriakhi Companies for home healthcare and

PAS services.    Defendant directed Idia and employees of the Oriakhi Company to pay illegal kickback payments to the patient recruiters, and, at times, Defendant directed Idia to use a stamp of his signature to sign illegal kickback payment checks that Idia gave to Defendant's many patient recruiters.   Additionally, Defendant paid his own office employees on a per-patient basis to recruit patients for home healthcare and PAS services and refer them to Defendant and the Oriakhi Companies.

Defendant, Idia, and their co-conspirators also paid Medicare and Medicaid patients who were getting services from the Oriakhi Companies to induce those patients to allow Defendant and his companies to use their Medicare and Medicaid numbers to bill the programs for home healthcare and PAS services.   Defendant, Idia, and their co-conspirators also directly paid some of these patients—by cash, check, Western Union, and Moneygram—for recruiting and referring other Medicare and Medicaid patients to Oriakhi's companies.

Moreover, Defendant paid and directed Idia, the patient recruiters, and their co-conspirators to pay physicians to provide them with medical documents certifying, recertifying, or authorizing the Oriakhi Companies' Medicare and Medicaid patients for home healthcare and PAS.   These illegal kickback payments to physicians were commonly referred to by Defendant, Idia, and their co-conspirators as "copayments."

During the conspiracy, Defendant knew that paying others—including patient recruiters, employees, and patients—in exchange for referring patients to his companies for Medicare and Medicaid-covered services constituted an illegal kickback.   As a signor on the Medicare Enrollment Application and Medicaid contracts, Defendant also knew that Medicare and Medicaid would not pay for claims that were predicated on illegal kickbacks and that the claims

12

that he submitted to Medicare and Medicaid were conditioned on his representations that the claims and underlying transactions complied with all federal and state laws, including the federal Anti-Kickback Statute.   Nevertheless, Defendant billed Medicare and Medicaid for claims that were based on illegal kickback payments.   Defendant knew that each time he submitted a claim to Medicare or Medicaid for services that he claimed that the Oriakhi Companies provided to a patient procured through an illegal kickback payment, he was submitting a fraudulent claim to Medicare or Medicaid because the claim was based on Defendant's false representations that the claim and the underlying transaction complied with the federal Anti-Kickback Statute and other state and federal laws.

As a result of this illegal conduct, from in or around 2009 through in or around 2016, Defendant and his co-conspirators used the Oriakhi Companies to submit approximately $17,212,051 in fraudulent home healthcare and PAS services claims to Medicare and Medicaid. Medicare and Medicaid paid Defendant and his co-conspirators approximately $16,198,600 on these fraudulent claims.   Using this money that Defendant and his co-conspirators defrauded from Medicare and Medicaid, Defendant paid illegal kickback payments to the patient recruiters, employees, physicians, and patients to promote his healthcare fraud conspiracies and ensure their successful continuation.

Defendant engaged in the above conduct with the intent to defraud Medicare and Medicaid.

### Breach of Plea Agreement

17.     If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea

13

Agreement, and Defendant's plea and sentence will stand.   Failure to fulfill completely all of the obligations under this Plea Agreement includes, but is not limited to, failure to tender the Plea Agreement to the Court, making false or misleading statements before the Court or to any agents of the United States, committing any further crime, or attempting to withdraw the plea after the district court accepts Defendant's guilty plea.   If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Waiver of Protections Under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), and U.S.S.G. § 1B1.8**

18.     Immediately upon signing this Plea Agreement, Defendant waives the protections afforded by Section 1B1.8(a) of the Sentencing Guidelines, Federal Rule of Criminal Procedure 11(f), and Federal Rule of Evidence 410.   Defendant's waiver of these protections is triggered upon *signing* this Plea Agreement, notwithstanding whether or not Defendant later withdraws his guilty plea pursuant to Rule 11(d) or whether or not a district court later accepts Defendant's guilty plea.   As a result, the United States will be free to use against Defendant, directly and indirectly, in any criminal or civil proceeding, any of the information, statements, and materials provided by Defendant pursuant to this Plea Agreement, including offering into evidence or otherwise using the Factual Basis in this Plea Agreement at Paragraph 16 in its case-in-chief at trial.

14

### Restitution, Forfeiture, and Fines – Generally

19.     This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

20.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) by the deadline set by the United States, or if no deadline is set, prior to sentencing.   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.   Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

21.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer.   Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

22.     Defendant understands that forfeiture, restitution, and fines are separate

components of sentencing and are separate obligations.

### Restitution

23.     Defendant agrees to pay full restitution to the victim regardless of the count of conviction.   Defendant stipulates and agrees that as a result of his criminal conduct, Medicare and Medicaid incurred a monetary loss of approximately $16,198,600.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate these victims.   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Defendant also understands that he will be jointly and severally liable for payment of this restitution amount with his co-defendants and co-conspirators.

### Forfeiture

24.     Defendant stipulates and agrees that the property listed in the Second Superseding Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

25.     Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of at least approximately $16,198,600 against him and in favor of the United States, and Defendant agrees to the imposition of a personal money judgment for that amount against him and in favor of the United States of America.   Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property, or his interest in property, up to the value of any unpaid portion of the money judgment, until the money judgment is fully satisfied.

26.     Defendant agrees to waive any and all interest in any asset that is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

16

27.     Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

28.     Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

29.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release, if any.   Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

//

//

//

//

17

**Complete Agreement**

30.    This written Plea Agreement, consisting of twenty pages, including the attached

addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the

United States, Defendant, and Defendant's counsel.   No promises or representations have been

made by the United States except as set forth in writing in this Plea Agreement.   Defendant

acknowledges that no threats have been made against him and that he is pleading guilty freely

and voluntarily because he is guilty.

31.    Any modification of this Plea Agreement must be in writing and signed by all

parties.

Filed at _____, Texas, on _____, 2017.

_____
Defendant

Subscribed and sworn to before me on _____, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

By: _____
Jonathan T. Baum
Aleza S. Remis
Trial Attorneys
Fraud Section, Criminal Division
United States Department of Justice

_____
Sean Buckley
Attorney for Defendant Godwin Oriakhi

## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

UNITED STATES OF AMERICA,       '

       v.                           ' CRIMINAL NO. 4:15-CR-319

GODWIN ORIAKHI,             '

       **Defendant.**        '

### PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Second Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        3/28/2017
Sean Buckley                         Date
Attorney for Defendant

19

I have consulted with my attorney and fully understand all my rights with respect to the Second Superseding Indictment pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every part of this Plea Agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

x _____          x _3/28/17_____
Godwin Oriakhi                                      Date
Defendant                                                 3/30/17

20