United States District Court
Southern District of Texas

**ENTERED**

December 18, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-4229 |
| | § | (CRIMINAL NO.) H-15-319-01 |
| GODWIN ORIAKHI | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

The defendant, Godwin Oriakhi (BOP # 90385-379)
("Defendant"), has filed a Motion Under 28 U.S.C. § 2255 to
Vacate, Set Aside, or Correct Sentence By a Person in Federal
Custody ("Amended § 2255 Motion") (Docket Entry No. 274).  The
government has filed United States' Response in Opposition
("United States' Response") (Docket Entry No. 292), arguing that
Defendant's Amended § 2255 Motion is without merit.[1]  The court
has carefully reviewed all of the parties' arguments.  Based on
this review, the court's recollection of the relevant
proceedings, and the application of governing legal authorities,
the Amended § 2255 Motion will be denied, and the corresponding
Civil Action No. H-19-4229 will be dismissed for the reasons
explained below.

---

[1]United States' Response, Docket Entry No. 292, p. 4.  All
page numbers for docket entries in the record refer to the
pagination inserted at the top of the page by the court's
electronic filing system, CM/ECF.

## I.  **Background**

Defendant was first charged with violations of federal law by an indictment returned on June 11, 2015.[2]  On June 16, 2016, a federal grand jury returned a second superseding indictment charging Defendant with ten counts:  two counts of conspiracy to commit health care fraud, 18 U.S.C. § 1349 (Counts 1 and 2);[3] three counts of healthcare fraud, 18 U.S.C. § 1347 (Counts 3 to 5);[4] one count of conspiracy to pay and receive healthcare kickbacks, 18 U.S.C. § 371 (Count 6);[5] three counts of payment and receipt of healthcare kickbacks, 42 U.S.C. § 1320a-7b (b)(1) and (b)(2) (Counts 7 to 9);[6] and one count of money laundering, 18 U.S.C. § 1956(h) (Count 13).[7]

The second superseding indictment charged that Defendant and three co-defendants including his daughter, Idia Oriakhi, paid kickbacks to refer Medicare beneficiaries to a home healthcare company that they owned and controlled, and then fraudulently billed Medicare and Medicaid for home health services that the

---

[2]Indictment, Docket Entry No. 1.

[3]Second Superseding Indictment, Docket Entry No. 81, pp. 6-12 ¶¶ 23-41.

[4]Id. at pp. 12-13 ¶¶ 42-43.

[5]Id. at pp. 13-16 ¶¶ 44-48.

[6]Id. at pp. 16-17 ¶¶ 49-50.

[7]Id. at pp. 17-18 ¶¶ 51-52.

-2-

beneficiaries never received, did not need, and did not qualify for.[8]

Defendant was arraigned on the second superseding indictment on June 24, 2016, and entered a plea of not guilty.[9]  Defense counsel Sean Buckley represented Defendant at the arraignment.[10] Buckley had been representing Defendant since November of 2015 following the return of the first superseding indictment.[11]  The case was set for trial on February 6, 2017.[12]

On January 27, 2017, Magistrate Judge Nancy K. Johnson held a hearing on whether to revoke Defendant's pretrial release based on the allegation that Defendant had maintained contact with his daughter Ikia Oriakhi while on bond and that he had directed her to destroy evidence subpoenaed by the United States.[13]  Testimony adduced at the hearing led Magistrate Judge Johnson to find clear and convincing evidence that Defendant violated the court's Order

---

[8]Id. at pp. 7-9 ¶¶ 26-33.

[9]Minute Entry for Proceedings Held Before Magistrate Judge Stephen Smith: Arraignment as to Godwin Oriakhi and Charles Esechie, Docket Entry No. 98.

[10]Id.

[11]Minute Entry for Proceedings Held Before Magistrate Judge Nancy K. Johnson: Initial Appearance as to Godwin Oriakhi, Docket Entry No. 52.

[12]Order Granting Motion to Continue as to Godwin Oriakhi, Charles Esechia, and Idia Oriakhi, Docket Entry No. 103, p. 2.

[13]Order of Detention Pending Trial as to Godwin Oriakhi, Docket Entry No. 136, pp. 1-2 ¶¶ 5-6.

Setting Conditions of Release by having contact with his
daughter.[14]  Judge Johnson also found that there was probable
cause to believe that Defendant violated the terms of his release
by instructing his daughter to destroy records that had been
subpoenaed by a federal grand jury.[15]  Accordingly, Judge Johnson
ordered that Defendant be held in custody pending trial.[16]

On March 30, 2017, Defendant pleaded guilty pursuant to a
plea agreement to two counts of conspiracy to commit healthcare
fraud and one count of conspiracy to commit money laundering.[17]
As the factual basis for his plea, Defendant agreed that he, his
daughter, and other members of his family owned, operated, and
controlled five home healthcare agencies in and around Houston,
Texas (the "Oriakhi Companies").[18]  Defendant admitted under oath
that he and his co-defendants had paid illegal kickbacks to
patient recruiters to refer patients to the Oriakhi Companies and
that he and his co-defendants had then submitted claims to
Medicare and Medicaid for providing home healthcare services to
these patients.[19]  Defendant admitted that by enrolling in

---

[14]Id. at pp. 2-3 ¶¶ 6-7.

[15]Id. at p. 3 ¶ 8.

[16]Id. at pp. 3-4.

[17]Plea Agreement as to Godwin Oriakhi, Docket Entry No. 151,
p. 1 ¶ 1.

[18]Id. at 9-10 ¶ 16.

[19]Id. at 10-13 ¶ 16.

Medicare and Medicaid and submitting claims to these programs he
was certifying that he was complying with all laws, including the
federal Anti-Kickback Statute.[20]   Defendant admitted that by
making claims to Medicare and Medicaid for patients procured
through an illegal kickback payment, he was submitting fraudulent
claims to Medicare and Medicaid.[21]   Defendant used the Medicare
and Medicaid payments on the fraudulent claims to pay illegal
kickbacks to patient recruiters, employees, physicians, and
patients to promote his healthcare fraud conspiracies and ensure
their successful continuation.[22]

At Defendant's re-arraignment hearing on March 30, 2017, the
following colloquy took place:

THE COURT:      Mr. Oriakhi, before I can accept your plea, I must
                ask you a number of questions.  It is very
                important that you listen carefully to all of my
                questions and that you answer all of my questions
                truthfully and completely for several reasons.

                First, since you are now under oath, you could be
                charged with the separate crime of perjury.

                Do you understand that?

DEFENDANT:      Yes.

THE COURT:      Also, before I can accept your guilty plea, I must
                make a number of findings.  My findings are based
                on your answers to my questions.  In order for my
                findings to be correct, it is therefore necessary
                that all of your answers to my questions be
                truthful and complete.

---

[20]Id. at 11 ¶ 16.

[21]Id. at 12-13 ¶ 16.

[22]Id. at 13 ¶ 16.

Do you understand that?

DEFENDANT:      Yes.

THE COURT:      Will you agree with me this morning that if you do
                not understand anything that I say, you will stop
                and ask me to repeat or explain whatever you do
                not understand?

DEFENDANT:      Yes.

THE COURT:      Also, you may stop at any time and speak with your
                attorney.  You do not need anyone's permission to
                speak with him.

                Let me emphasize to you the importance of
                providing truthful and complete answers this
                morning.  Sometimes after a defendant has been
                sentenced, he will file a motion or will write the
                Court a letter stating that the answers he gave at
                his re-arraignment were not true or were not
                complete.

                I want you to understand that I am going to rely,
                not only today but at all times in the future, on
                the answers you give me today.  If you should ever
                in the future say something different from what
                you have told me today, I will disregard that
                future statement and rely only on what you have
                told me today.

                Do you understand that?

DEFENDANT:      Yes.

THE COURT:      How old are you?

DEFENDANT:      61.

THE COURT:      Where were you born?

DEFENDANT:      In Africa.

THE COURT:      What country?

DEFENDANT:      In Nigeria, Africa.

THE COURT:      Did you graduate from the equivalent of high

                              -6-

|                |                                                              |
|----------------|--------------------------------------------------------------|
|                | school in Africa?                                            |
| DEFENDANT:     | Yes.                                                         |
| THE COURT:     | What language did you use in high school?                   |
| DEFENDANT:     | English.                                                     |
| THE COURT:     | Did you obtain any other formal education in Nigeria?       |
| DEFENDANT:     | No.  But here in the U.S.                                    |
| THE COURT:     | What education have you obtained in the United States?      |
| DEFENDANT:     | I have a college degree.                                    |
| THE COURT:     | From what institution did you receive your degree?         |
| DEFENDANT:     | From Texas Southern University.                             |
| THE COURT:     | What was your degree in?                                     |
| DEFENDANT:     | In architecture and construction.                          |
| THE COURT:     | Was it a bachelor's degree?                                  |
| DEFENDANT:     | Yes.                                                        |
| THE COURT:     | Have you ever been diagnosed or treated for any type of mental problem? |
| DEFENDANT:     | No.                                                         |
| THE COURT:     | Have you ever been diagnosed or treated for addiction to drugs or alcohol? |
| DEFENDANT:     | No.                                                         |
| THE COURT:     | Has anyone ever told you that you should be treated for any type of mental problem or for any type of addiction? |
| DEFENDANT:     | No.                                                         |
| THE COURT:     | How many times have you discussed this case with your attorney, Mr. Buckley? |
| DEFENDANT:     | A few times.  I can't remember the exact times.            |

```
THE COURT:        More than five?

DEFENDANT:        I think so.

THE COURT:        Has he discussed with you the charges against you
                  and what the government would have to prove to
                  establish your guilt?

DEFENDANT:        Yes.

THE COURT:        Has he reviewed with you the evidence that the
                  government has against you?

DEFENDANT:        Some of it, while I was out on bond, yes.

THE COURT:        All right. Has he explained to you how the federal
                  advisory sentencing guidelines might apply in this
                  case?

DEFENDANT:        Yes.

THE COURT:        Are you a United States citizen?

DEFENDANT:        Yes.

THE COURT:        Has Mr. Buckley answered all of your questions?

DEFENDANT:        Yeah.  Most of it, yes.

THE COURT:        Well, if there is some questions he has not
                  answered, if you want to take some time now, I'll
                  certainly give you some time.

DEFENDANT:        No.  Go ahead.

THE COURT:        Are you sure?

DEFENDANT:        Yes.

THE COURT:        Has Mr. Buckley done everything that you have
                  asked him to do?

DEFENDANT:        Yes.

THE COURT:        Are you fully satisfied with the advice and
                  counsel he has provided you?

DEFENDANT:        Yes.
```

THE COURT:      You do not have to plead guilty.  You have a right
                to go to trial.  If you went to trial, you would
                have the right to the assistance of an attorney at
                all stages of the trial.

                If you could not afford an attorney, the Court
                could appoint an attorney for you.

                You would have the right to see and hear the
                government's witnesses at trial and have your
                attorney question them.

                You would have the right to compel other people to
                come into court and provide evidence for you.

                You would not be required to testify at a trial.

                And you could not be convicted at a trial unless
                the jury unanimously found beyond a reasonable
                doubt that you were guilty.

                If you plead guilty today, however, there will not
                be a trial; and you will give up the right to a
                trial and all the protections that are associated
                with a trial.

                Do you understand that?

DEFENDANT:      Yes.

THE COURT:      Have you taken any type of drug or medicine within
                the last 24 hours?

DEFENDANT:      Just aspirin.

THE COURT:      Pardon me?

DEFENDANT:      Just aspirin.

THE COURT:      Aspirin?

DEFENDANT:      Yes.

THE COURT:      All right.  Thank you.

                Let me now explain to you the possible
                consequences of pleading guilty.

                              -9-

On Counts 1 and 2, the maximum sentence that you face is ten years in prison and a fine of $250,000 and three years of supervised release and a special assessment of $100 for each count and restitution to the victims and forfeiture.

As to Count 3, the maximum sentence that you face is 20 years in prison and a fine of $500,000 or twice the value of the property involved, whichever is greater, at least three years of supervised release, a $100 special assessment and restitution and forfeiture.

Do you understand that?

DEFENDANT:      Yes.

MR. BAUM:       And, Your Honor, just to clarify, I think you misspoke and said Count 3. That was Count 13, Your Honor.

THE COURT:      Count 13. Thank you.

There is no parole in federal court. That means you'll actually have to serve your sentence in prison. Your term of supervised release will be subject to a number of conditions, which will be monitored by a probation officer.

If I have found that you've violated those conditions, I could revoke your supervised release and send you back to prison without any credit for the time you had already served on supervised release.

Do you understand that?

DEFENDANT:      Yes.

THE COURT:      The Court has not made any decision about what your sentence will be. If I accept your guilty plea, a probation officer will interview you, investigate the facts of the case and prepare a presentence investigation report.

You will have an opportunity to read the report and to discuss the report with your attorney before your sentencing.

-10-

You or the government may file objections to the presence report.  At the time of your sentencing, I will rule on any objections; and I will then determine your advisory guideline range and your sentence.

What you need to understand about this process of determining your sentence is that the process has not yet begun.  That means no one knows what advisory guideline range the probation officer will recommend or what advisory guideline range I will find to be applicable or what sentence I will impose.

Do you understand that?

DEFENDANT:     Yes.

THE COURT:     If the sentence that I impose is greater than the sentence that you now expect or greater than the sentence that your attorney or anyone else may have predicted, you will be bound by your guilty plea today, regardless of your sentence.  You will not be allowed to change your mind to withdraw your guilty plea because you are not satisfied with your sentence.

Do you understand that?                          \

DEFENDANT:     Yes.

THE COURT:     The government has provided me with a copy of a written plea agreement.  Have you read the agreement?

(Sotto voce discussion between Defendant and counsel.)

DEFENDANT:     No, I have not — I have not reviewed it; but the — my attorney has explained it to me, yes.

MR. BUCKLEY:   I think, Your Honor, there may be a miscommunication.  I think he may have meant that he hadn't necessarily reviewed the document that's in front of him, which is the document that he and I have discussed together and reviewed during our visits, including yesterday.

I don't know if — if I may take a moment to

-11-

                          clarify the answer.

THE COURT:       Sure.

(Sotto voce discussion between Defendant and counsel.)

MR. BUCKLEY:     Your Honor, I'll let Mr. Oriakhi answer for
                 himself; but I think he was not clear that this
                 was the same plea agreement that he has previously
                 signed and that has been filed with the court.
                 That was, I believe, the confusion.

THE COURT:       Do you have a copy there before you?

DEFENDANT:       Yes, sir.

THE COURT:       Have you read what I have been furnished, which is
                 an 18-page plea agreement of which you have
                 already signed?  Have you read that before today?

DEFENDANT:       Yes.

THE COURT:       All right.  When did you read it?

DEFENDANT:       Two days ago.

THE COURT:       Have you discussed it with your attorney?

DEFENDANT:       Yeah.  We discussed it, yes.

THE COURT:       How much time would you estimate that you have
                 spent discussing the agreement with your attorney?

DEFENDANT:       About an hour.

THE COURT:       Did he answer any questions that you had about the
                 agreement?

DEFENDANT:       Yes.

THE COURT:       I want to go over the essential parts of it again,
                 just to be sure that you understand the essential
                 parts.

                 In Paragraph 1, you agree to plead guilty to
                 Counts 1, 2 and 13, which I described earlier.

                 If you'll turn, please, to Page 4, Paragraph 7

                                  -12-

says, "The parties understand this plea agreement
carries the potential for a motion for departure
under Section 5K1.1 of the United States
Sentencing Guidelines.  Defendant understands and
agrees that whether such a motion is filed will be
determined solely by the United States through the
United States Department of Justice, Criminal
Division, Fraud Section."

What that means is that if the government should
decide not to file a motion for downward
departure, there is nothing that you can do about
that decision.

Do you understand that?

DEFENDANT:      Yes.

THE COURT:      By fully cooperating, as explained in Paragraph 8,
you agree to provide all information relating to
any criminal activity known to you, including but
not limited to, healthcare fraud.

You agree to testify truthfully as a witness
before any grand jury or trial jury or
administrative proceedings.

You agree to attend any interviews and conferences
requested by the government.

And you agree to provide all documents in your
possession or subject to your control.

If you'll please now turn to page 6.  In this
agreement the United States and you agree that the
following sentencing guidelines will be used to
calculate your guideline range.

In Paragraph (a), you agree that the amount you
and your conspirators billed to Medicare and
Medicaid was approximately $17,212,051 and that
this loss amount will be used to support a 20-
level enhancement to your base offense level under
Guideline Section 2B1.1(b)1(K) because you and
your co-conspirators intended to defraud Medicare
and Medicaid of more than $9.5 million.

In Paragraph 10(b), you and the government agree

-13-

that the Court should apply Guideline Section
2B1.1(b)7(B)(ii) of the guidelines and should
therefore enhance your base offense level by three
levels because you and your co-conspirators
defrauded Medicare and Medicaid by more than $7
million.

In Paragraph 10(c), you and the government agree
that the Court should apply Guideline Sections
2S1.1(a)(1) and (b)(2)(B) and should therefore
enhance your base offense level by two levels
because you conspired to launder the money that
you and your co-conspirators defrauded from
Medicare and used the proceeds of their fraud to
promote the counts of conviction in violation of
Title 18 of the United States Code Section
1956(h).

And finally, in Paragraph 10(d), you and the
government agree that the Court should apply
Section 3B1.3 of the guidelines and should
therefore enhance your base offense level by two
levels because you abused a position of trust to
commit the counts of conviction.

If you'll turn to Page 7, you and the government
agree that in addition to the above sentencing
guidelines, the Court may use any other sentencing
guidelines to calculate your guideline range.

The United States and the defendant agree that the
United States is free to ask the Court to consider
your relevant conduct and apply any other
sentencing guidelines to your guideline range,
even if those sentencing guidelines increase your
guideline range.

Likewise, you are free to ask the Court not to
apply any other sentencing guidelines to your
guideline range.

If you'll please turn to Page 8.  In Paragraph
14(a), the government agrees that you are entitled
to a two-level downward adjustment in your offense
level by pleading guilty.

In Paragraph 14(b), you and the government agree
that the base offense level for Counts 1 and 2

-14-

would be determined by Guideline Section
2B1.1(a)(2).

In Paragraph 14(c), the government agrees that if
you fulfill your obligations of the plea
agreement, including but not limited to persisting
in your plea through sentencing and not opposing
the forfeiture of assets contemplated in
Paragraphs 19 through 22 and 24 through 28 of the
plea agreement, the United States agrees to
recommend a sentence at the low end of the
applicable guideline range.

Finally, in Paragraph 14(e), if you agree — if you
plead guilty to Counts 1, 2 and 13 and persist in
that plea through sentencing and fulfill your
other obligations, the government agrees to
dismiss the remaining counts of the second
superseding indictment at the time of sentencing.

In Paragraph 14(d), if the government should
decide to file a Section 5K1 motion, the
government will recommend to the court that the
reduction in sentence be subtracted from the low
end of the applicable guideline range.

MR. BUCKLEY:     Pardon me, Your Honor.  Mr. Oriakhi asked me for
                 clarification.  May I have a moment?

THE COURT:       Sure.

MR. BUCKLEY:     Thank you.

(Sotto voce discussion between Defendant and counsel.)

MR. BUCKLEY:     Thank you, Your Honor.

THE COURT:       If you'll please turn to Page 16, in Paragraph 23,
                 you stipulate and agree that, as a result of your
                 criminal conduct, Medicare and Medicaid incurred a
                 loss of approximately $16,198,600.

                 In Paragraph 25, you stipulate and agree that the
                 factual basis for your guilty plea supports the
                 forfeiture of at least $16,198,600 against you in
                 favor of the United States.

                 In Paragraph 28, you waive — that means "give

-15-

up" — your right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

Now, other than the factual basis for your guilty plea, which I will discuss in a minute, have I correctly described your plea agreement with the United States government as you understand it?

DEFENDANT:     Yes, sir.

THE COURT:     Other than what is stated in this written plea agreement, has the United States government made any promises to you in connection with your guilty plea?

DEFENDANT:     No. I don't recall any.

THE COURT:     Has anyone threatened you or forced you to plead guilty?

DEFENDANT:     No.

THE COURT:     Has the United States government told you what sentence you will receive if you plead guilty?

DEFENDANT:     No.

THE COURT:     Has your lawyer told you what sentence you will receive if you plead guilty?

DEFENDANT:     No.

THE COURT:     Has anyone else told you what sentence you will receive if you plead guilty?

DEFENDANT:     No.

THE COURT:     All right.  Now, in order for the government to prove your guilt as to Counts 1 and 2, the government would have to show that you and at least one other person made an agreement to commit the crime of healthcare fraud as charged in the second superseding indictment and that you joined in the agreement willfully; that is, with the intent to further the unlawful purpose of that agreement.

-16-

As to Count 13, the government would have to show
that you and at least one other person made an
agreement to commit the crime of money laundering
as charged in the second superseding indictment,
that you knew of the unlawful purpose of that
agreement and that you joined in that agreement
willfully; that is, with the intent to further
that unlawful purpose.

If you'll please refer back to your plea
agreement.  If you'll please turn to Page 9,
Paragraph 16 says, "Defendant is pleading guilty
because he is guilty of the offenses charged in
Counts 1, 2 and 13 of the second superseding
indictment which charge him with conspiracy to
commit healthcare fraud and money laundering in
violation of Title 18 United States Code Sections
1349 and 1956(h).

"If this case were to proceed to trial, the
defendant agrees that the United States could
prove each element of the offenses charged in
Counts 1, 2 and 13 beyond a reasonable doubt.  The
following facts, among others, would be offered to
establish the defendant's guilt."

And then on the bottom of Page 9, on Pages 10, 11,
12, and 13, there is a factual basis for your
guilty plea.

Have you carefully read pages 9, 10, 11, 12 and 13
of your plea agreement?

DEFENDANT:      Yes.

THE COURT:      Are all of the facts stated on those pages true?

DEFENDANT:      I agree.

THE COURT:      Well, did you do everything described on those
                pages of the plea agreement?

DEFENDANT:      Yes.

THE COURT:      How do you plead to the offenses charged against
                you in Counts 1, 2 and 13?  Guilty or not guilty?

DEFENDANT:      Guilty.

-17-

Appeal Transcript as to Godwin Oriakhi re: Hearing on Re-Arraignment ("Re-Arraignment Transcript"), Docket Entry No. 210, 3:7-19:23.

The Probation Office prepared a Presentence Investigation Report ("PSR") for use in determining Defendant's punishment under the United States Sentencing Guidelines Manual.[23] After applying a number of sentencing enhancements, including a 2-level enhancement for vulnerable victims and a 2-level enhancement for obstruction of justice, the Probation Office determined that Defendant's total offense level was 47.[24] Buckley objected to these enhancements and to the failure to give a 2-level reduction for acceptance of responsibility.[25]

Defendant was sentenced on August 17, 2017.[26] The court granted Defendant a two-level downward adjustment for acceptance of responsibility while simultaneously applying the obstruction of justice enhancement.[27] The court determined that Defendant's base offense level was 43 and his criminal history category was

---

[23]PSR, Docket Entry No. 169.

[24]Id. at 21 ¶¶ 77, 80, and 81.

[25]PSR Addendum, Docket Entry No. 170, pp. 7, 9-10.

[26]Appeal Transcript as to Godwin Oriakhi re: Sentencing ("Sentencing Transcript"), Docket Entry No. 213, p. 1.

[27]Id. at 6:8-11.

-18-

Category I.[28]  The court noted that Defendant's Guidelines range was life in prison but that the statutory maximum was 480 months in prison, which became the advisory Guidelines sentence.[29] After considering statements by Defendant, his defense counsel, and the United States, the court imposed a sentence of 480 months, to be followed by one year of supervised release.[30]

Defendant filed a notice of appeal on August 25, 2017.[31] That same day, Buckley withdrew as defense counsel,[32] and was replaced by appellate counsel.[33]  On July 16, 2018, the Fifth Circuit rejected Defendant's argument that the court erred in applying an enhancement for obstruction of justice and affirmed the court's judgment.  <u>United States v. Oriakhi</u>, 728 F. App'x 386 (5th Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 1398 (2019).  Defendant timely filed a Motion to Vacate Under 28 U.S.C. § 2255.[34]  On

---

[28]<u>Id.</u> at 6:14-16.

[29]<u>Id.</u> at 6:16-18.

[30]<u>Id.</u> at 15:4-11.

[31]Notice of Appeal to US Court of Appeals for the Fifth Circuit by Godwin Oriakhi, Docket Entry No. 197.

[32]Motion to Withdraw as Attorney by Sean Ryan Buckley by Godwin Oriakhi, Docket Entry No. 199.

[33]Notice of Attorney Appearance: Yolanda Evette Jarmon appearing for Godwin Oriakhi, Docket Entry No. 198.

[34]Motion to Amend 28 U.S.C. § 2255, Docket Entry No. 249; Motion to Vacate under 28 U.S.C. § 2255, Docket Entry No. 251; Memorandum of Law in Support of Motion to Vacate under 28 U.S.C.

(continued...)

November 14, 2019, Defendant retained counsel to represent him in the § 2255 action.[35]  Defendant, through his counsel, moved for an extension of time to file an amended § 2255 Motion, which this court granted.[36]  Defendant filed his Amended § 2255 Motion on March 25, 2020, alleging ineffective assistance of counsel.[37] The United States filed a Motion to Compel an Affidavit from former defense counsel Buckley to respond to Defendant's allegations of ineffective assistance of counsel and requested an extension of time to respond to the Amended § 2255 Motion after Mr. Buckley filed his affidavit.[38]  On June 24, 2020, Buckley filed an affidavit responding to the allegations raised in the Amended § 2255 Motion.[39]

Defendant now seeks relief under 28 U.S.C. § 2255, arguing that (1) his counsel was ineffective for advising him to enter

---

(...continued)
§ 2255, Docket Entry No. 252.

[35]Motion for Zachary Lee Newland to Appear Pro Hac Vice by Godwin Oriakhi, Docket Entry No. 256.

[36]Unopposed Motion for Extension of Time to File Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Docket Entry No. 258.

[37]Amended § 2255 Motion, Docket Entry No. 274.

[38]Motion to Compel Affidavits from Defense Counsel and for Extension of Time to File Answer by USA as to Godwin Oriakhi, Docket Entry No. 275.

[39]Amended Affidavit of Attorney Sean Buckley ("Counsel's Affidavit"), Docket Entry No. 291.

-20-

into a plea agreement that "conveyed no benefit,"[40] and (2) an
evidentiary hearing is warranted.[41]  On August 3, 2020, the
government filed its response arguing that Defendant is not
entitled to relief and that the Amended § 2255 Motion must be
denied because his claims lack merit.[42]

## II.  Standard of Review

A prisoner serving a sentence imposed by a federal court
"claiming the right to be released upon the ground that the
sentence was imposed in violation of the Constitution or laws of
the United States . . . may move the court which imposed the
sentence to vacate, set aside, or correct the sentence."  28
U.S.C. § 2255(a).  If the court concludes that the prisoner's
motion is meritorious, it must "vacate and set the judgment aside
and shall discharge the prisoner or resentence him or grant a new
trial or correct the sentence as may appear appropriate."  28
U.S.C. § 2255(b).

A prisoner seeking relief under 28 U.S.C. § 2255 "must
clear a significantly higher hurdle" than the standard that would
exist on direct appeal.  United States v. Frady, 102 S. Ct. 1584,

---

[40]Memorandum of Law in Support of Amended § 2255 Motion
("Defendant's Memo"), Docket Entry No. 274-1, p. 14.

[41]Id. at 18.

[42]United States' Response, Docket Entry No. 292, p. 4.

1593 (1982).  After a defendant has been convicted and has
exhausted or waived any right to appeal, a court is normally
"entitled to presume that [he] stands fairly and finally
convicted."  United States v. Willis, 273 F.3d 592, 595 (5th Cir.
2001) (citations omitted).  For this reason, review of
convictions under § 2255 is limited to "questions of
constitutional or jurisdictional magnitude," United States v.
Scruggs, 691 F.3d 661, 666 (5th Cir. 2012), or claims that could
not have been raised on direct appeal, such as those for
ineffective assistance of counsel.  See, e.g., Massaro v. United
States, 123 S. Ct. 1690, 1694-96 (2003).


## III.  **Discussion**

### A.   **Ineffective Assistance of Counsel**

A criminal defendant is entitled to effective assistance of
counsel in connection with the decision to enter a guilty plea.
Lee v. United States, 137 S. Ct. 1958, 1964 (2017).  A
defendant's ineffective-assistance claim is analyzed under the
legal standard set forth in Strickland v. Washington, 104 S. Ct.
2052 (1984).  To prevail under the Strickland standard, a
defendant must demonstrate that (1) counsel's performance was
deficient, and (2) he was prejudiced as the result of counsel's
deficient performance.  Id. at 2064.  "Unless a defendant makes
both showings, it cannot be said that the conviction . . . "

-22-

resulted from a breakdown in the adversary process that rendered the result unreliable." Id.

### 1. Deficient Performance

To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 104 S. Ct. at 2064. This is a "highly deferential" inquiry in which "counsel is strongly presumed to have rendered adequate assistance" and that the challenged conduct was the product of reasoned trial strategy. Id. at 2065. Under this standard, courts must "presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010) (citing Strickland, 104 S. Ct. at 2065). To overcome this presumption, a defendant must identify acts or omissions of counsel that were not the result of reasonable professional judgment. Strickland, 104 S. Ct. at 2066.

As it performs this inquiry "the court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." United States v. Harris, 408 F.3d 186, 189 (2005) (citing Strickland, 104 S. Ct. at 2055). "The court must then determine

-23-

whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance" while recognizing "that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland,</u> 104 S. Ct. at 2066.  Strict adherence to the <u>Strickland</u> standard is all the more essential when reviewing the choices an attorney made at the plea bargaining stage because of the "potential for the distortions and imbalance that can inhere in a hindsight perspective" and because "ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect." <u>Premo v. Moore,</u> 131 S. Ct. 733, 741 (2011).

Defendant alleges that his counsel was deficient for advising him to plead guilty when the plea agreement "did not convey any benefit to Oriakhi during the plea bargaining process."[43]  Defendant raises two arguments to support this claim: (1) Defendant's counsel did not advise him that "the Sentencing Guideline range would likely call for an effective life sentence of 480 months"[44] and (2) Defendant's counsel did not advise him that "he could proceed to trial and still

---

[43]Defendant's Memo, Docket Entry No. 274-1, p. 14.

[44]<u>Id.</u> at 16.

potentially obtain acceptance of responsibility."[45]

The first argument exemplifies the "distortions and imbalance that can inhere in a hindsight perspective." See Premo, 131 S. Ct. at 741. That the court would impose a 480-month sentence certainly appears "likely" now that it has already happened. But counsel's obligation was to exercise reasonable professional judgment, not clairvoyance. The court does not evaluate counsel's effectiveness based on what is now known with the benefit of hindsight — instead it evaluates counsel's conduct from counsel's perspective at the time. Harris, 408 F.3d at 189. At the time that Defendant's counsel was advising him on the plea bargain, the statutory maximum was just one of a range of possible outcomes, all of which counsel made known to the Defendant: "At all times, I advised Mr. Oriakhi that I could not guarantee a particular sentence, that I could not guarantee leniency from the Court, that I could not guarantee a 5K1.1 sentence reduction, that I could not guarantee any particular Guidelines calculation, and that the Court had discretion and authority to sentence him up to the statutory maximum."[46]

Moreover, Defendant's assertion that counsel did not properly advise him on the Guideline range is belied by his representations during his plea colloquy, in which he affirmed

---

[45]Id. at 17.

[46]Counsel's Affidavit, Docket Entry No. 291, p. 5-6.

-25-

that counsel had explained how the Guidelines might apply,[47] that
he understood that the statutory maximum sentence he faced was 10
years in prison on each of Counts 1 and 2 and 20 years in prison
on Count 3,[48] and that he understood his sentence could "be
greater than the sentence that you now expect or greater than the
sentence that your attorney or anyone else may have predicted."[49]
Accordingly, the court finds that counsel was not deficient in
his advice to Defendant regarding how the Sentencing Guidelines
could apply.

Nor is the court persuaded by Defendant's argument that "it
was deficient performance for Buckley to not advise Oriakhi that
he could proceed to trial and still potentially obtain acceptance
of responsibility."[50]  Defendant cites <u>United States v. Brace</u>,
145 F.3d 247, 264 (5th Cir. 1995) (en banc), to support his
assertion that "[t]he Fifth Circuit has long held that a
defendant is not automatically precluded from receiving a
reduction in acceptance of responsibility if he exercises his
right to trial."[51]  This statement is true as far as it goes, but
the Fifth Circuit in <u>Brace</u> qualified its ruling, noting that

---

[47]Re-Arraignment Transcript, Docket Entry No. 210, 6:21-24.

[48]<u>Id.</u> at 8:20-9:12.

[49]<u>Id.</u> at 10:19-11:2.

[50]Defendant's Memo, Docket Entry No. 274-1, p. 17.

[51]<u>Id.</u>

Application Note 2 to § 3E1.1(a) provides that in "<u>rare</u> situations a defendant may <u>clearly</u> demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial," for example, "where a defendant goes to trial to assert and preserve issues that <u>do not relate to factual guilt</u>." 145 F.3d at 264-65 (emphasis in original). The Fifth Circuit emphasized that in each such instance, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." <u>Id.</u> at 265.

Had Defendant gone to trial, it would not have been one of those "rare situations" in which a defendant seeks only to assert and preserve issues not related to factual guilt. <u>See id.</u> at 264-65. Defendant concedes as much by suggesting that he would have "put the Government to its burden of proof" and still sought acceptance of responsibility credit afterwards.[52]

Defendant's assertion that the plea agreement "conveyed no benefit"[53] is not accurate. It is true that Defendant's offense level under the Guidelines was probably going to exceed the maximum offense level of 43 whether he went to trial or accepted

_____

[52]<u>Id.</u>

[53]<u>Id.</u> at 14.

the plea agreement.[54]  It is also true that an offense level of
43 would result in a Guidelines sentence of the statutory maximum
(which was 480 months under the plea agreement and would have
been greater had Defendant been convicted on all counts at
trial).[55]  But for the reasons set forth above, if Defendant had
gone to trial, he could not have relied on his acceptance of
responsibility as a basis for requesting that the court depart or
vary from the Guidelines.

Defense counsel presented Defendant the opportunity to
provide "substantial assistance to the Government pursuant to the
§ 5K1.1 provision in his Plea Agreement," which would have
opened up the possibility of a significant downward departure had
Defendant cooperated.[56]  Counsel states that he "may have told
Mr. Oriakhi that a sentence of 15 years or less was not outside
the realm of possibility if he pled guilty, successfully gained
the benefit of a significant § 5K1.1 downward departure, and
drew leniency from the Court due to his age and ongoing battle
with cancer."[57]  But counsel states unequivocally that he
"communicated to Mr. Oriakhi the Government's firm position that
Mr. Oriakhi would not be given any opportunity to earn a § 5K1.1

---

[54]PSR, Docket Entry No. 169 ¶¶ 73-86.

[55]Id. at ¶ 112.

[56]Counsel's Affidavit, Docket Entry No. 291, p. 10.

[57]Id. at 9-10.

departure if he went to trial."[58]

Defense counsel states that following Defendant's plea of guilty and before sentencing, Defendant proved "unwilling or unable to candidly and sufficiently expound on the details of his own knowledge and conduct or disclose how he knew certain information about others' activities," thus defeating any hope of obtaining credit for providing substantial assistance.[59] But the fact that a § 5K1.1 departure proved impossible after Defendant entered into the plea agreement is irrelevant to the inquiry of deficient performance, which looks only to what defense counsel knew at the time of the agreement and does not rely on the benefit of hindsight. See Harris, 408 F.3d at 189. Thus, the plea agreement conferred at least two benefits on Defendant that he would have lost had he gone to trial: (1) the possibility of a downward departure or variance based on accepting responsibility and (2) the possibility of a downward departure for providing substantial assistance under Federal Sentencing Guidelines § 5K1.1.

The sole authority Defendant cites to support his argument that the plea bargain conveyed him no benefit is Esslinger v. Davis, 44 F.3d 1515 (11th Cir. 1995). In Esslinger, the defendant pleaded guilty to first-degree rape pursuant to a plea

---

[58] Id. at 10.

[59] Id.

agreement that "called for a sentence no greater than the
statutory minimum."  44 F.3d at 1517-18.  The length of the
minimum term of imprisonment depended on the extent of the
defendant's prior felony record — ten years for a defendant with
no previous felony convictions, fifteen years for a defendant
with one prior felony conviction, and ninety-nine years for a
defendant with two prior felony convictions.  Id.  The defendant
had two prior felony convictions, but his counsel told the court
that he had none (despite being aware of one), which led the
court to inform the defendant during the plea colloquy that the
minimum prison term he could receive would be ten years.  Id. at
1518.  The Eleventh Circuit found the defense counsel's conduct
"simply unexcusable," because if the defendant had known that his
mandatory minimum was ninety-nine years instead of ten years,
there was a reasonable probability that he would have gone to
trial.  Id. at 1530.

     Esslinger is inapposite because its holding is based on
materially distinct facts.  Unlike the defendant in Esslinger,
Defendant was not subject to any mandatory minimums.  Moreover,
nothing in the record indicates that Defendant's counsel
misrepresented any facts to Defendant or to the court.  The court
was not bound by the Guidelines and could have departed
downwards, which was the outcome that defense counsel sought for
Defendant given Defendant's age and medical condition, but which

required Defendant to accept responsibility in a way that going
to trial would have foreclosed.

Finally, the court must bear in mind that defense counsel
was balancing the benefits of this plea agreement against the
substantial risks of going to trial.  Defense counsel sets forth
in his affidavit the facts that gave rise to his reasonable
belief that a trial for Defendant would have resulted in an
effective life sentence, stating that the United States appeared
to have "overwhelming admissible evidence to support the
allegations in the Indictment (including all superseding
indictments),"[60] and that this evidence "supported its position
that Mr. Oriakhi and his healthcare organizations were entangled
in a brazen and egregious pattern of fraud."[61]  To demonstrate
the "patently outrageous" nature of the fraud, counsel cites "one
typical instance" in which Defendant's organization "applied for
reimbursement from Medicare for providing home healthcare
services to a male patient by falsely certifying to Medicare that
the man suffered from a 'hematoma of the vulva.'"[62]  The court
agrees that evidence like this would have put Defendant at a
significant disadvantage at trial.

The case against Defendant became even stronger after the

---

[60]Id. at 2.

[61]Id.

[62]Id.

indictment of his daughter, Idia Oriakhi, who "began cooperating with the Government and made statements directly implicating Mr. Oriakhi in the illegal scheme and further accusing him of directing her to destroy documents requested by a grand jury subpoena."[63]  The evidence from Defendant's daughter was sufficiently convincing to persuade Judge Johnson that there was probable cause to order Defendant's detention pending trial.[64] It ultimately provided the basis for Defendant's obstruction-of-justice enhancement.[65]

Despite the mounting evidence against him, Defendant "insisted that his home healthcare organization was certainly not paying illegal per-patient kickbacks for referrals of Medicare beneficiaries," although he later "changed his story to acknowledge that he knew of the per-patient referral payments but believed the payments were lawful."[66]  These and other statements from Defendant led counsel to the reasonable conclusion that a jury would not find Defendant credible, and that if Defendant were to testify at trial "he would risk angering the Court, further alienating the Government, and earning a sentencing

---

[63]Id. at 4.

[64]Order of Detention Pending Trial as to Godwin Oriakhi, Docket Entry No. 136, pp. 1-2 ¶ 5.

[65]PSR, Docket Entry No. 169, pp. 17-18 ¶ 57.

[66]Counsel's Affidavit, Docket Entry No. 291, pp. 3-4.

enhancement for obstruction."[67]

In light of defense counsel's professional opinion about the "indefensibility of Mr. Oriakhi's case at trial" and his assessment that Defendant's Guidelines calculations "put him at or near the top of the Guidelines," defense counsel advised Defendant that "his only chance of avoiding a de facto life sentence considering his age and medical condition was to plead guilty and seek leniency from the Court[.]"[68] The court does not find this advice to be "outside the wide range of professionally competent assistance." Strickland, 104 S. Ct. at 2066. Defendant cannot point to any evidence that would overcome Strickland's strong presumption that counsel rendered adequate assistance. See id. at 2065. Accordingly, the court does not find that counsel's performance was deficient.


2.   Prejudice

Even assuming that a defendant can demonstrate error by his counsel, he must still demonstrate the requisite prejudice in order to prevail. See Strickland at 2066 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). To establish prejudice under

---

[67]Id. at 4.

[68]Id. at 6.

-33-

<u>Strickland</u>, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 2068.  In the guilty plea context, the prejudice component of the <u>Strickland</u> standard is not satisfied unless a defendant shows that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 106 S. Ct. 366, 370 (1985).  The defendant must then show that "going to trial . . . would have given him a reasonable chance of obtaining a more favorable result."  <u>United States v. Batamula</u>, 823 F.3d 237, 240 (5th Cir. 2016).

In undertaking this review it is necessary to examine "the 'totality of the evidence'" as it relates to the defendant's decision-making.  <u>Lee</u>, 137 S. Ct. at 1966 (citations and internal quotation marks omitted).  The Supreme Court has observed that "[a] defendant without any viable defense will be highly likely to lose at trial" and will "rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial."  <u>Id.</u>  This factor is relevant to the prejudice inquiry for purposes of establishing an ineffective-assistance claim because "defendants obviously weigh their prospects at trial" when making the decision to enter a plea.  <u>Id.</u>  A plea of guilt should not be set aside or upset

-34-

"solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 1967.

Likewise, the Fifth Circuit has recognized that where the evidence against a defendant is overwhelming, the possibility of an acquittal, and the ability to show prejudice as the result of entering a guilty plea based on advice from counsel, is "exceedingly unlikely." Young v. Spinner, 873 F.3d 282, 287 (5th Cir. 2017) (citing United States v. Kayode, 777 F.3d 719, 726-27 (5th Cir. 2014).

Defendant argues that he was prejudiced because there is a reasonable probability that he would have gone to trial absent his counsel's advice "that a massive downward variance was realistically achievable."[69] But Defendant fails to show prejudice because he offers no specific reasons why going to trial would have led to a more favorable result. See Batamula, 823 F.3d at 240. For the reasons discussed above in Part A, subpart 1, the court is persuaded that the evidence against Defendant was overwhelming. Defendant articulates no "viable defense," which indicates that he would have been "highly likely to lose at trial." See Lee, 137 S. Ct. at 1966. Thus, the court cannot find that going to trial would have left Defendant any

---

[69]Defendant's Memo, Docket Entry No. 274-1, pp. 17-18.

better off than the plea agreement he ultimately signed.

In order to prevail on his ineffective assistance of counsel claim, Defendant must show both deficient performance and prejudice. See Strickland, 104 S. Ct. at 2064. He has shown neither.

## B.  Defendant's Guilty Plea

It is well established that a guilty plea will be upheld on collateral review if the plea was "entered into knowingly, voluntarily, and intelligently." Montoya v. Johnson, 226 F.3d 399, 405 (5th Cir. 2000) (citing James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995)). A guilty plea is knowing and voluntary if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. See Bradshaw v. Stumpf, 125 S. Ct. 2398, 2405 (2005) ("A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'") (quoting Brady v. United States, 90 S.Ct. 1463, 1469 (1970)). "[A] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 118 S. Ct. 1604, 1610 (1998) (quoting Mabry v. Johnson, 104 S. Ct. 2543, 2546-47 (1984)).

-36-

A knowing and voluntary guilty plea waives all non-jurisdictional defects that occurred before the plea.  See Tollett v. Henderson, 93 S. Ct. 1602, 1608 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").  This waiver includes "all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (citation omitted).  The only ineffective-assistance claim that comes within this waiver is one taking exception to counsel's advice concerning the plea.  See Tollett, 93 S. Ct. at 1608.

The transcript of the re-arraignment proceeding confirms that Defendant understood the charges against him and the potential consequences that he faced before he entered his guilty plea.[70]  Defendant also confirmed that no one threatened or forced him to plead guilty,[71] and he admitted doing the acts that

---

[70]Re-Arraignment Transcript, Docket Entry No. 210, 8:20-9:8.

[71]Id. at 17:20-22.

-37-

constitute the charged offenses.[72]  During the plea colloquy the
court asked Defendant a series of questions about the advice he
received from his counsel.  Defendant acknowledged that he had
met with his attorney to discuss the case in person at least five
times and that counsel had answered all of his questions.[73]  The
court asked Defendant if counsel had done all that Defendant had
asked him to do, and Defendant replied that he had.[74]  Defendant
acknowledged that he was satisfied with the advice his counsel
had provided.[75]  Based on Defendant's representations, the court
found that his guilty plea was "a knowing and voluntary plea,
supported by an independent basis in fact, establishing each of
the essential elements of the offense."[76]

Representations made by the defendant, his lawyer, and the
prosecutor, as well as the findings made by the trial judge
accepting the plea, constitute a formidable barrier to any
subsequent collateral attack.  See Blackledge v. Allison, 97 S.
Ct. 1621, 1629 (1977).  A defendant's "[s]olemn declarations in
open court carry a strong presumption of verity."  Id.; see also
United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002)

---

[72]Id. at 21:7-22:23.

[73]Id. at 6:7-12.

[74]Id. at 7:11-13.

[75]Id. at 7:14-16.

[76]Id. at 20:11-14.

("Reviewing courts give great weight to the defendant's
statements at the plea colloquy."). As a result, a defendant's
representations during a plea colloquy impose a "heavy burden" of
proof upon the defendant to show that his plea was not
voluntarily and knowingly made. See United States v. Diaz, 733
F.2d 371, 373-74 (5th Cir. 1984); see also DeVille v. Whitley, 21
F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to
voluntariness are not an absolute bar to raising this claim,
[defendants] face a heavy burden in proving that they are
entitled to relief because such testimony in open court carries a
strong presumption of verity.").

Defendant does not allege facts demonstrating that he was
misinformed or that his guilty plea was coerced. To the extent
that Defendant contends that his plea was rendered involuntary
because of deficient advice from his defense attorney, Defendant
fails to establish that he was denied effective assistance of
counsel in connection with his plea or at any time thereafter for
reasons discussed in Part A, above. As a result, Defendant has
waived any claim that his defense counsel was deficient for
failing to challenge the evidence or raise objections.[77] See
Tollett, 93 S. Ct. at 1608; see also Smith, 711 F.2d at 682

_____

[77]See Defendant's Memo, Docket Entry No. 274-1, p. 9
("Buckley prepared a number of objections to the PSR, but only
objected to three matters that altered Oriakhi's Sentencing
Guidelines.").

-39-

(holding that the defendant's ineffective-assistance claim concerning his counsel's failure to review the prosecutor's file to verify laboratory test results, investigate witnesses, or "find 'holes' in the government's case" against him were waived by his guilty plea). Accordingly, Defendant is not entitled to relief on those allegations of ineffective assistance that are unrelated to his decision to enter a guilty plea based on his counsel's advice.

**C.    Evidentiary Hearing**

Defendant argues that an evidentiary hearing is warranted.[78] "The question whether an evidentiary hearing is necessary to resolve charges of ineffective assistance depends on an assessment of the record." United States v. Smith, 915 F.2d 959, 964 (5th Cir. 1990). A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, files, and record conclusively show that the prisoner is entitled to no relief. United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992). "If the record is clearly adequate to dispose fairly of the allegations, the court need inquire no further." Smith, 915 F.2d at 964. "A hearing is also unnecessary when the petitioner's allegations are 'inconsistent with his conduct' and when he does not offer 'detailed and specific facts' surrounding his

---

[78] Id. at 18.

-40-

allegations." Id. (quoting Davis v. Butler, 825 F.2d 892, 894 (5th Cir. 1987)).

Defendant claims that his counsel tried to pressure him into pleading guilty by threatening that he would withdraw as Defendant's attorney if Defendant insisted on going to trial.[79] But this allegation is contradicted by Defendant's sworn statements during his re-arraignment hearing in which he confirmed that no one had threatened or forced him to plead guilty[80] and that he was fully satisfied with Buckley's advice and counsel.[81]  Because Defendant's allegations are contradicted by the record, they do not render an evidentiary hearing necessary.  See Smith, 915 F.2d at 964.  The court concludes that the record is clearly adequate to dispose of Defendant's claims fairly, and that no evidentiary hearing is required.

## IV.  **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings states that a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability will not issue unless the applicant makes "a substantial showing of the denial of a

---

[79]Id. at 4.

[80]Re-Arraignment Transcript, Docket Entry No. 210, 17:20-22.

[81]Id. at 7:14-16.

-41-

constitutional right," 28 U.S.C. § 2253(c)(2), which requires an applicant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). This requires a petitioner to show that "jurists of reason could disagree with the [reviewing] court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017) (citation and internal quotation marks omitted).

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the defendant does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will be denied.

### V.  **Conclusion and Order**

Based on the foregoing, Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in

-42-

Federal Custody filed by Defendant (Docket Entry No. 274) is **DENIED** and this action is dismissed with prejudice; and a certificate of appealability is **DENIED**.

**The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.**

**SIGNED** at Houston, Texas, on this the 18th day of December, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-43-